IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

RETAIL LIQUOR ASSOCIATION OF )
OKLAHOMA, an Oklahoma non-profit )
corporation; and JOSEPH P. RICHARD, )
an individual, )
 )
             Plaintiffs, )
 )
v. )   Case No. CIV-17-49-C
 )
OKLAHOMA ALCOHOLIC BEVERAGE )
LAWS ENFORCEMENT COMMISSION; )
and KEITH A. BURT, in his official )
capacity as Director of Oklahoma Alcoholic )
Beverage Laws Enforcement Commission, )
 )
             Defendants. )

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion for Summary Judgment (Dkt. No. 20). Plaintiffs have responded and the Motion is now at issue.

### I. Background

On May 27, 2016, the Oklahoma Legislature passed Senate Joint Resolution 68, which placed a proposition on the November 8, 2016, general election ballot called State Question 792 ("S.Q. 792"). S.Q. 792 reformed Oklahoma's alcohol regulatory framework by repealing Article 28 of the Oklahoma Constitution and replacing it with Article 28A. Plaintiffs circulated an initiative petition for another proposed constitutional amendment, State Question 791, but it did not receive enough support to be placed on the ballot.

S.Q. 792 passed with 65.6% of the votes in favor of the measure and 34.4% against. Article 28A will become effective October 1, 2018.

On December 19, 2016, Plaintiffs filed suit in the District Court of Oklahoma County to request injunctive and declaratory relief. Plaintiffs argued Article 28A is unconstitutional because it violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. Defendants removed the case to this Court, which then denied a pending motion for temporary injunction (Mem. Op. & Order, Dkt. No. 15) and directed Defendants to file the present Motion (Order, Dkt. No. 14). A review of Oklahoma's alcohol regulatory framework and each proposed change is relevant to the subsequent arguments of both parties.

A. Article 28

Oklahoma follows a three-tier alcohol regulatory system. Manufacturers of alcohol are required to sell their product at the same price to each Oklahoma wholesale distributor that wishes to purchase it. These wholesalers supply Oklahoma's retail package stores and establishments offering alcohol for on-premises consumption. Currently, Article 28 of the Oklahoma Constitution regulates those who wish to sell alcoholic drinks containing more than 3.2% of alcohol by weight ("ABW"). The sale of beverages 3.2% ABW and below is not restricted by location or license. See Okla. Const. Art. 28 § 2; 37 Okla. Stat. § 163.1 (defining "low-point beer" as containing .5% - 3.2% ABW and setting out its regulation in the Oklahoma Alcoholic Beverage Control Act).

Retail Package Licenses are available for retailers wishing to sell beverages above 3.2% ABW. Wholesale distributors must also obtain licenses through the state. Retail

Package Licenses for the sale of alcoholic beverages and Wholesale Distributor's Licenses may only be issued to an individual or general limited partnership; these entities are without limited liability protections.  See Okla. Const. Art. 28 §§ 4, 10.  Applicants for Retail Package Licenses and Wholesale Distributor's Licenses must have lived in Oklahoma for at least ten years immediately preceding the date of license application and felons may not obtain a license.  See Okla. Const. Art. 28 § 10.  A person or partnership may only hold one Retail Package License and only alcoholic beverages may be sold on the premises.  See Okla. Const. Art. 28 § 4.

Article 28 permits winemakers to sell wine to a licensed wholesale distributor or directly to consumers present in the winery or at festivals and tradeshows.  Winemakers who produce less than ten thousand gallons of wine per year may elect to ship their product directly to licensed retail package stores and restaurants within Oklahoma, but making the election prevents them from also using a licensed wholesale distributor.  See Okla. Const. Art. 28 § 3(A).

B.  Article 28A

Article 28A makes several changes to the regulatory system, beginning with the sale of alcohol.  The state will issue Retail Spirits Licenses, allowing the sale of all refrigerated and non-refrigerated alcohol and any grocery store items, so long as the sale of non-alcoholic items does not exceed 20% of the store's monthly sales.  See Okla. Const. Art. 28A § 3(A)(1).  These licenses have a reduced five-year residency requirement and a person or partnership may hold two licenses.  See Okla. Const. Art. 28A § 4(A).

Retail Beer Licenses and Retail Wine Licenses will permit supermarkets, grocery stores, convenience stores, drug stores, warehouse clubs, and supercenters to sell refrigerated and non-refrigerated wine and beer. See Okla. Const. Art. 28A § 3(A), (B). Retail Wine Licensees may make agreements with corporations or other business entities if the corporation does not own more than 50% equity in the business. See Okla. Const. Art. 28A § 4(C). Winemakers may ship the wine they produce directly to consumers and the production restriction for direct shipment to retail stores and restaurants will be raised from ten thousand gallons to fifteen thousand gallons produced annually. See Okla. Const. Art. 28A § 2(A)(4). Wine and Spirits Wholesaler's Licenses will have a five-year residency requirement and the entity restrictions are similar to Retail Wine Licenses. Beer wholesalers will have no residency requirement or entity restrictions. See Okla. Const. Art. 28A § 4(D).

## II. Motion for Summary Judgment Standard

The standard for summary judgment is well established. Summary judgment may only be granted if the evidence of record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it is essential to the proper disposition of the claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the movant carries this initial burden, the nonmovant must then set forth specific facts outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant. Fed. R.

Civ. P. 56(c). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. Equal Protection

A. Equal Protection Standard

In this case, Plaintiffs challenge a state constitutional amendment approved by the legislature and ratified by voters. The parties agree the proper standard of review is the rational basis test. (Pls.' Am. Resp. to Mot. Summ. J., Dkt. No. 24, p. 17.) Accordingly, Plaintiffs must establish Article 28A's regulatory scheme treats its members differently than others similarly situated and the difference is not "rationally related to furthering a legitimate state interest." Vance v. Bradley, 440 U.S. 93, 97 (1979) (quoting Mass. Bd. of Ret. v. Murgia, 427 U.S. 307, 312 (1976). Rational basis review creates a "strong presumption of validity" concerning the classification and if Defendants identify "plausible reasons" for the measure, then the court's "inquiry is at an end." F.C.C. v. Beach Commc'ns, Inc., 508 U.S. 307, 313-14 (1993) (quoting U.S. R.R. Ret. Bd. v. Fritz, 449 U.S. 166, 179 (1980)). To overcome the Motion, Plaintiffs bear the burden "to negative every conceivable basis which might support it." Id. at 315 (citations and internal quotation marks omitted).

"[T]hose challenging the judgment of the people must convince the court that the facts on which the classification is apparently based could not reasonably be conceived to be true by the decisionmaker." Gregory v. Ashcroft, 501 U.S. 452, 473 (1991) (citations, internal quotation marks, and internal alterations omitted). A court "will not overturn such

5

a law unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [a court] can only conclude that the people's actions were irrational." Id. at 471 (citations, internal quotation marks, and internal alterations omitted). The Supreme Court has called this standard of review "a paradigm of judicial restraint." Beach Commc'ns, Inc., 508 U.S. at 314.

B. Similarly Situated

Under the purview of Article 28A, Retail Beer Licensees may sell beer with 8.99% ABW or less, Retail Wine Licensees may sell wine with 15% ABW or less, and Retail Spirits Licensees may sell spirits in any concentration. See 37A Okla. Stat. § 2-109. Plaintiffs argue that as sellers of alcohol, all licensees are similarly situated and therefore the classification is unconstitutional. Defendants argue the types of alcohol sold under each license are materially different and therefore not similarly situated.

Plaintiffs essentially argue that because Oklahoma has drawn the dividing line for regulation between all beverages containing more or less than 3.2% ABW in the past, any change to the division is unconstitutional. This simply cannot be the case. The question is not whether the change in classification is a violation of equal protection, but whether the classification presented is rationally related to a legitimate state interest. See Armour v. City of Indianapolis, Ind., 566 U.S. 673, 685 (2012) (stating equal protection does not require the government "to draw the perfect line nor even to draw a line superior to some other line it might have drawn" but "only that the line actually drawn be a rational line"). Thus, the Court finds Plaintiffs' argument that Oklahoma's history of regulation shows spirits are similarly situated to wine and beer unconvincing.

6

The parties present varying evidence to show whether wine and beer are similar to spirits. Defendants demonstrate spirits are associated with binge drinking, a litany of health concerns, crime, and increased risk for vehicular accidents when compared to wine and beer. Plaintiffs rebut these facts by presenting counter-studies or arguing Defendants should rely on Oklahoma-specific data. However, the government "is not compelled to verify its legislative assumptions with empirical evidence" and may use "common sense propositions" to "uphold social and economic legislation analyzed under the rational relationship test." Okla. Educ. Ass'n v. Alcoholic Beverage Laws Enf't Comm'n, 889 F.2d 929, 934 (10th Cir. 1989) (citations omitted). As a matter of general knowledge, wine and beer are materially different products from spirits due to their social uses and alcohol content. To support this concept, Defendants cite to twenty-three other states that regulate wine and beer differently from spirits. (Aff. of William Kerr, Dkt. No. 20-3, pp. 7-9.) This general knowledge coupled with Defendants' evidence makes it rational to conclude all alcohol sellers holding licenses in Oklahoma are not similarly situated.[1]

Next, the Court will determine whether Article 28A's regulatory scheme is rationally related to furthering a legitimate state interest. Defendants state the broad goals of the Oklahoma legislature are to reduce access to products with high alcohol content and steer society towards lower ABW products. Oklahoma attempts to achieve these goals by increasing the price of alcohol through taxation and limiting the availability of alcohol by

---

[1] Because rational basis review of the Equal Protection Clause first requires the classes be similarly situated and then that the disparate treatment is rationally related to furthering a legitimate state interest, the Court's inquiry could be at an end. However, in the interest of justice, the Court will address each argument advanced by the parties.

regulating sales and distribution. (Defs.' Mot. Summ. J., Dkt. No. 20, p. 25.) The Court will address each area of contention below.

C. Number of Licenses

Plaintiffs argue the restriction on the number of Retail Spirits Licenses an individual or partnership may hold violates equal protection. While acknowledging that restricting access to alcohol is an important goal, Plaintiffs argue the restriction of Retail Spirits Licenses and the lack of a similar limitation for Retail Wine and Beer Licenses is not rationally related to that goal.[2] Plaintiffs state the additional wine and beer sellers will add more duties for government officials, making regulation more lax, resulting in greater availability of alcohol to Oklahomans through legal means, underage purchase, and theft. While it is true wine and beer will likely be more available, it is rational for the government to draw the line when it comes to spirit sales. The plan of limiting the number of Retail Spirits Licenses fits squarely within the goal of reducing access to products with high alcohol content and steering society towards lower ABW products such as wine and beer.[3]

---

[2] Interestingly, State Question 791 proposed by Plaintiffs includes a limitation of two retail package licenses per person or business entity and initially allows two retail grocery wine store licenses with two more available per year until after ten years, when the number of retail grocery wine store licenses available to one person or business entity is unlimited. Therefore, after ten years, Plaintiffs' proposed law is essentially equal to Article 28A.

[3] Defendants offer other rational reasons for why this regulation should be allowed to stand: (1) residents wish to allow competition and lower prices in the wine and beer market while keeping the availability of spirits lower and prices higher; (2) allowing unlimited Retail Wine and Beer Licenses will encourage grocery stores to spread across the state, increasing access to foods. Plaintiffs fail to negate both of these reasons.

D. 20% Restriction on Non-Alcoholic Items

Plaintiffs complain the requirement that no more than 20% of monthly Retail Spirit Licenses sales may come from non-alcoholic merchandise is arbitrary. Defendants state the reason for the requirement is to ensure retail liquor stores do not become *de facto* grocery stores. Plaintiffs argue this is a poor method of advancing the goal because it ignores the fact that people under the age of twenty-one must not enter liquor stores. While this may be true, the government is not required to implement the best measure, merely a rational one. See Gregory, 501 U.S. at 473. Second, Plaintiffs argue the measure is overly burdensome to store owners who would be forced to keep nearly daily accountings in order to comply with the 20% sales cap.[4] They offer Florida's regulation of non-alcoholic merchandise sales as a comparison, which restricts the type of goods permitted for sale within liquor stores rather than restricting the amount. See Fla. Stat. § 565.04. While Florida's system might benefit retail liquor stores, it is not for the Court "to judge the wisdom, fairness, or logic of legislative choices." Beach Commc'ns, Inc., 508 U.S. at 313 (citations omitted). The measure is rationally related to a legitimate governmental interest.

E. Residency Requirements and Entity Restrictions

Plaintiffs object to the residency requirements and entity restrictions imposed by Article 28A. Plaintiffs agree the residency and entity restrictions ensure personal responsibility for those conducting business within Oklahoma, but argue the restrictions

---

[4] Notably, Plaintiffs' proposed State Question 791 imposes a similar 30% cap on retail package stores and retail grocery wine stores. Although Article 28A does not set sales caps for Retail Wine and Beer Licensees, as previously stated, the measure is rationally related to the legitimate state interest to limit access to higher ABW products than wine and beer.

should apply equally to beer and wine retailers. Again, this argument is based on the premise that beer and wine are not different from spirits and cannot be regulated differently. The Court has determined alcohol sellers are not similarly situated, nor is it irrational for the government to treat the products differently based on alcohol content.

Defendants state the goal of the measure is to advance the interest of ensuring those who sell the highest concentration of alcohol remain personally liable for the business. The owners must have a significant length of good history in Oklahoma and must be found within the state, thus subject to its legal procures and encouraging owners' compliance with the regulatory plan. Plaintiffs agree with this purpose and have failed to show it violates the rational basis test under the Equal Protection Clause.

<u>IV. Standing as Against Non-Party Manufacturers and Wholesalers</u>

Plaintiffs argue certain items contained in Article 28A related to manufacturers and wholesalers also violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. Defendants argue Plaintiffs lack standing to assert the arguments. The Court must address this issue at the threshold.

<u>A. Standard</u>

Standing, as an "irreducible constitutional minimum," has three elements: (1) plaintiff suffered an "injury in fact" or "an invasion of a legally protected interest which is (a) concrete and particularized" and (b) "actual or imminent, not conjectural or hypothetical;" (2) plaintiff shows causation, which requires "the injury [is] fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court;" and (3) it must be likely the injury will be redressed

by a favorable decision. Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992) (citations, internal quotation marks, and internal alterations omitted). When a plaintiff's asserted injury arises from the government's regulation (or lack thereof) of another person, standing is "substantially more difficult to establish." Id. at 562 (citations and internal quotation marks omitted). In this circumstance, "[t]he existence of one or more of the essential elements of standing depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict." Id. (citations and internal quotation marks omitted). This requires a plaintiff to "adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury." Id. (citation omitted).

B. Regulation of Wholesalers

Plaintiffs object to Article 28A's regulation of wholesalers pertaining to ownership because it is not congruent to the ownership requirements of businesses with Retail Spirits Licenses. Defendants argue Plaintiffs are not wholesalers and do not compete with them, thus they are not injured by the regulation. Plaintiffs offer no response to the standing challenge. The argument Plaintiffs assert that is most helpful to the issue is the fact that allowing 50% corporate ownership of wholesalers will result in cheaper wine and beer prices and retail liquor stores could also offer reduced prices if regulated similarly. This is not sufficient for Plaintiffs to establish an injury in fact because Plaintiffs will enjoy lower prices from goods supplied by wholesalers, not an injury. In total, Plaintiffs have failed to assert any standing argument from which the Court can draw a meaningful conclusion.

Even if Plaintiffs did have standing to assert this claim, Plaintiffs are not similarly situated to wholesalers. Plaintiffs conclude without explaining that spirits retailers and wine and spirits wholesalers are similarly situated entities. In fact, the entities are on two different levels of Oklahoma's three-tier system. Courts have concluded retailers and wholesalers are not similar entities for taxation purposes. Caskey Baking Co. v. Commonwealth of Virginia, 313 U.S. 117, 121 (1941) (classification of wholesale and retail merchants for taxation purposes is valid under equal protection); Alabama Dep't of Revenue v. CSX Transp., Inc., ___ U.S. ____, 135 S. Ct. 1136, 1142 (2015). Here, retailers sell alcohol directly to consumers and wholesalers are not permitted to make direct sales. Because the two perform materially different roles in the marketplace, this is sufficient justification for the government to treat the two classes differently.

C. Regulation of Manufacturers

Plaintiffs object to the regulation of manufacturers by arguing wineries act as retailers when they are allowed to ship directly to consumers, and thus, spirits retailers should be allowed the same privilege. Again, Plaintiffs fail to address Defendants' standing challenge and make conclusory statements regarding whether wineries and retail spirits licensees are similarly situated because they both sell products directly to consumers.[5] As before stated, entities belonging to different tiers of the regulatory scheme are not similarly situated. Even if they were, the government states the reason for the

---

[5] Because major mail carriers prohibit the shipment of spirits, Plaintiffs advocate for allowing direct ground delivery of spirits by Retail Spirits Licensees. Article 28A does not contemplate this possibility and the Court will not rewrite the law.

regulation is allowing small local wineries to expand their customer base and broadening consumer choice while balancing public health concerns by limiting the quantity of wine that may be shipped. Plaintiffs do not successfully negate these justifications. Thus, Plaintiffs' argument must fail for reasons of lack of standing, the parties are not similarly situated, and the government has identified plausible reasons for the measure.

## CONCLUSION

Accordingly, Plaintiffs have not upheld the burden under rational basis review of equal protection for their requested declaratory relief. The Court will not strike down as unconstitutional Article 28A of the Oklahoma Constitution; therefore, this conclusion precludes the requested injunctive relief. For the reasons stated, Defendant's Motion for Summary Judgment (Dkt. No. 20) is GRANTED. A separate Judgment shall issue.

IT IS SO ORDERED this 24th day of August, 2017.

ROBIN J. CAUTHRON
United States District Judge